UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMY S.,

                Plaintiff,

v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                Defendant.

CASE NO. C18-0427-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1975.[1] She completed the ninth grade of high school and previously worked as a receptionist, fast food worker, cashier II, general clerk, and leasing agent.

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

(AR 39, 45.)

Plaintiff filed a DIB application on May 6, 2014, alleging disability beginning November 1, 2013. (AR 171-72.) Her date last insured is December 31, 2017. Plaintiff's application was denied initially and on reconsideration. On August 11, 2016, ALJ Tom Morris held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 37-73.) On October 27, 2016, the ALJ issued a decision finding plaintiff not disabled. (AR 18-30.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on January 16, 2018 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found the following impairments severe: chronic anemia; other and unspecified arthropathies; migraine headaches; disorders of the muscle, ligament, and fascia; affective disorders; anxiety disorders; and attention deficit disorder/attention deficit hyperactivity disorder (ADHD). Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

ORDER
PAGE - 2

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, with the following limitations: frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling, but only occasional climbing of ladders, ropes, or scaffolds; avoid concentrated exposure to extreme cold, noise, vibration, hazards including dangerous machinery and unprotected heights, dust, odors, fumes, gases, and poor ventilation; able to follow short and simple instructions involved with simple, routine work tasks, with normal breaks and lunch; can have contact with the general public in a superficial manner (no more than five minutes direct interaction per occurrence), but cannot have constant contact with the general public in work settings such as a cashier; can have frequent contact with coworkers, but primary work tasks should not involve collaborative efforts more than occasionally; should be an emphasis on occupational duties frequently dealing with objects, rather than people; can take instructions for work tasks and there can be occasional changes in the work environment; and would be off-task about ten percent of an eight-hour workday. With that assessment, the ALJ found plaintiff unable to perform past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a production assembler, laboratory sample carrier, and nut and bolt assembler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d

1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error in the evaluation of medical opinions, her symptom testimony, at step three, in the evaluation of lay testimony, and in the incomplete hypotheticals posed to the VE. She requests remand for an award of benefits. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Opinions

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where the record contains contradictory opinions, as in this case, a treating or examining doctor's opinion may not be rejected without specific and legitimate reasons, supported by substantial evidence in the record. *Id*. at 830-31. The opinion of an "other source," such as a nurse practitioner, is entitled to less weight than the opinion of a doctor, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and may be discounted with germane reasons, *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).[2]

Plaintiff argues the ALJ failed to properly evaluate medical opinions from treating provider

---

[2] New regulations, effective March 27, 2017, include nurse practitioners and others as "acceptable medical sources," like physicians and psychologists. 20 C.F.R. § 404.1502.

ORDER
PAGE - 4

Kenneth Asher, Ph.D., consultative examiner Holly Petaja Ph.D., treating provider Erika Giraldo, DNP, ARNP, and nonexamining State agency consultants Diane Fligstein, Ph.D. and John Gilbert, Ph.D.

A.  Medical Opinions and ALJ Findings

    1.  Dr. Diane Fligstein and Dr. John Gilbert:

Drs. Fligstein and Gilbert, in September 2014 and March 2015 respectively, rendered opinions consistent with the RFC adopted, including the ability to work superficially with the general public, adapt to a slow paced work environment, and understand, remember, and carry out short, simple instructions. (AR 25, 83-85, 103-05.) Considering his earlier finding of moderate difficulties in social functioning and in concentration, persistence, and pace, the ALJ found these opinions consistent with the treatment record as a whole. (AR 25.) Plaintiff's pain, anxiety, and depression would limit her ability to follow complex instructions and deal with the general public on a constant basis. The ALJ assigned the opinions great weight.

    2.  Dr. Holly Petaja:

Dr. Petaja conducted a psychological consultative examination on August 26, 2014. (AR 702-06.) Dr. Petaja found plaintiff's abilities in relation to short, simple instructions likely within normal limits, but that plaintiff would have difficulty following complex instructions and persisting in complex tasks. (AR 706.) Plaintiff had fair ability to reason and judgment, and her memory was variable, with the ability to recall one of three objects after a delay. She had limited sustained concentration and persistence, spelling "world" forward and backward correctly, but completing serial sevens with two errors. She handled her self-care, but took an extended amount of time to complete. Her social interactions and interpretational relationships were significantly limited and she would likely have difficulty adapting to routine changes in a typical work setting,

keeping up a normal work pace, and maintaining appropriate behavior in a work setting. Plaintiff's mental health symptoms would interfere with her ability to complete a normal workday/week.

The ALJ gave Dr. Petaja's opinions only some weight. The RFC provided for plaintiff to be off task for up to ten percent of the workday and her ability to work primarily with objects and not people in light of her symptoms. (AR 25-26.) The treatment notes did not support an inability to function, as she is moderately limited in social functioning and concentration, persistence, and pace. (AR 26.) Finally, plaintiff presented with generally benign findings during mental status examinations (MSEs).

3.   Dr. Kenneth Asher:

After examining plaintiff on nine occasions between December 4, 2015 and March 1, 2016, Dr. Asher produced a psychological evaluation. (AR 1261-78.) He assessed plaintiff as markedly limited in activities of daily living and maintaining social functioning the majority of time, severely limited in maintaining concentration, persistence, and pace, and identified multiple episodes of decompensation, each of extended duration. (AR 1276.) In work settings, plaintiff would have a marked limitation in understanding detailed instructions and accepting instructions and criticism from supervisors; marked-to-severe limitation carrying out detailed instructions, maintaining concentration for extended periods, and completing a normal workday/ week; and moderate limitation in interacting with the public, getting along with coworkers, and in adaptation/setting realistic goals. Dr. Asher opined plaintiff met the criteria for Listings 12.06, anxiety-related disorders, and equaled a combined listing with consideration of her severe symptoms from ADHD, Listing 12.02, and depressive disorders, Listing 12.04. In a medical source opinion form dated July 11, 2016, Dr. Asher opined, in addition to mild/moderate limitations, plaintiff would either have noticeable difficulty more than twenty percent of the day or would be unable to function in a

ORDER
PAGE - 6

number of areas, including with detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday/week, and accepting instructions and responding appropriately to criticism from supervisors. (AR 1374-75.) He interpreted a "marked" limitation as at least two standard deviations more than the comparison population. (AR 1376.) Also, while plaintiff's functioning may not always be at the marked level from day to day, "(sometimes it is worse)", it met the criteria the majority of the time.

The ALJ noted plaintiff's attorney made the referral to Dr. Asher. (AR 26.) He reiterated his conclusions of no more than moderate limitation in the functional areas and as to the generally benign MSEs. He considered that plaintiff underwent the examinations with Dr. Asher "not in an attempt to seek treatment for symptoms, but rather, through attorney referral in connection with an effort to generate evidence for the current appeal[,]" and that Dr. Asher was paid for the report. (*Id*.) Although finding the evidence legitimate and deserving of due consideration, the ALJ could not entirely ignore the context in which the opinion was produced. (*Id*.) The ALJ therefore gave Dr. Asher's opinion little weight.

    4.    <u>Erika Giraldo, DNP, ARNP</u>:

Nurse practitioner Giraldo treated plaintiff for several years prior to the ALJ's decision. In a July 14, 2016 medical source opinion, Giraldo opined plaintiff was unable to maintain attention and concentration for extended periods, perform activities within a schedule and maintain attendance, work in coordination with or proximity to others, make simple work-related decisions, complete a normal workday/week, travel in unfamiliar places or use public transportation, or set realistic goals or make plans independently of others. (AR 1452-53.) Among other findings, Giraldo also assessed plaintiff as having noticeable difficulty more than twenty percent of the workday/week in relation to detailed instructions, being punctual, in all areas of social interaction

other than asking simple questions or requesting assistance, and in responding appropriately to changes in a work setting. (*Id*.) In a letter that same date, Giraldo stated plaintiff had difficulty leaving her house and had to reschedule many appointments, could not consistently attend to her activities of daily living, such as basic hygiene, household chores/tasks, or shopping, does not have friends and did not leave the house other than for appointments, unsuccessfully tried to volunteer at a pet shelter in 2014, could be irritable with paranoid thoughts, making it difficult for her to manage stress with peers, had depression and medications contributing to her lethargy, and was unable to handle the stressors of a job. (AR 1451.) While plaintiff had improved with psychotherapy and medication management, it was not to the point she could maintain a job, and Giraldo recommended long-term disability.

The ALJ identified Giraldo as an "other source" under the regulations. (AR 26.) He found the opinion internally inconsistent with Giraldo's own treatment notes, which did not support her opinion of severity to the extent plaintiff could not function. For example, plaintiff consistently reported her medications were effective in stabilizing mood, minimizing anxiety, decreasing panic attacks, and controlling ADHD symptoms. (*Id*. (citing AR 720, 730, 914, 916, 930, 933, 948, 952, 1280, 1292, 1300).) The ALJ also found Giraldo's opinions inconsistent with the treatment record as a whole and more restricting than supported by the medical evidence. He assigned the opinion little weight.

B.     <u>Assessment of ALJ Findings</u>

An ALJ may reject medical opinion evidence based on inconsistency with the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). *See also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."). An ALJ may also consider

evidence of improvement with treatment as a basis for rejecting medical opinions. *Thomas*, 278 F.3d at 957. In this case, however, the Court finds the ALJ's rejection of the psychological medical opinions to lack the support of substantial evidence.

As the Commissioner concedes, neither the mere fact plaintiff's attorney referred her to Dr. Asher, nor the fact Dr. Asher was paid for the evaluation justify the rejection of his opinion. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.") Dr. Asher's report does not itself provide "grounds for suspicion as to its legitimacy," such as evidence of actual improprieties or the absence of any objective medical basis for the opinion. *Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir. 1996) (citations omitted). *Accord Lester*, 81 F.3d 832. The basis for Dr. Asher's opinion seems clear. He provided treatment on a number of occasions and, in rendering his opinion, relied on the results of several psychological questionnaires and inventories, his MSE, his review of medical records, including Dr. Petaja's evaluation, and his interviews of plaintiff, her husband, Giraldo, and plaintiff's internist, Dr. Frank Marinkovich. (AR 1261-62, 1320-73.)

Moreover, beyond noting Dr. Asher's opinion of severe-to-marked limitations in three functional areas, the ALJ did not discuss or address any of the content of Dr. Asher's report. He did not, for example, address plaintiff's performance on MSE/cognitive functioning as yielding "a very low score reaching the upper level associated with dementia, with problems particularly with concentration, memory, and spatial detail." (AR 1274; *but see id*. (finding test results "psychometrically valid, with the possibility of some distortion.")) "Measures of personality and psychological problems indicated severe problems with anxiety, depression and mood, and particularly concerns with physical functioning and health." (*Id*.) Her attention, concentration,

ORDER
PAGE - 9

thinking, and memory were significantly affected, she showed effects of past traumatic experiences, her self-concept, relations with others, and ability to perform daily functions were limited and affected by her condition, and she had been at heightened risk of self-harm. (*Id.*) (*See also* AR 1270 (scored "16 out of a possible 30, well below-normal and at the upper end of the range indicative of dementia."); AR 1273 (plaintiff gave a lot of information, but tended to lose focus, jump around, and forget what she was asked, sometimes required redirection or clarifying questions, and often needed much more time than average to complete tasks, and showed effects of fatigue and malaise).) Dr. Asher also stated that a full measure of plaintiff's intellectual abilities would be valuable to determine her functioning in several areas, including attention and perception, concentration, memory, organization, precision and fine-motor control, and reasoning and problem-solving. (AR 1277.)

The Court further finds problems with the ALJ's discussion of the medical evidence in relation to the opinions of Dr. Asher, Dr. Petaja, and Giraldo. The ALJ, for example, found the record to show improvement with treatment. (AR 25-26.) However, while treatment records dated in 2013 and mid-2014 appear to show situational factors and symptoms improving with medication management and counseling (AR 515-29), subsequent records contain varied observations and findings. (*See, e.g.*, AR 725 (October 3, 2014: medication working well for ADHD, but severe anxiety, taking Xanax, and still "having panic attacks daily and they are much more intense."; hyperventilating, excessively worrying, irritable/cranky; not sleeping well; teary, with depressed and anxious mood and congruent affect on MSE; "[W]orsening depression and anxiety. Insomnia, anxiety, panic and depression have worsened."); AR 730 (December 30, 2014: mood down, Adderall working for irritability and anger and "kind of" helps stay focused; depressed and anxious on MSE); AR 916 (February 5, 2015: worsened mood, steady irritability, a lot of anxiety, but

ORDER
PAGE - 10

Xanax brings down to 5/10); AR 930 (July 23, 2015: depression not doing well, "she is suicidal."; situational stressors, recent panic attack, crying, taking fast and a lot on MSE); AR 1280-81 (December 3, 2015: ADHD controlled, but depression continues with improved suicidal thoughts; husband almost called crisis line due to erratic behavior; irritable, severe depression, increased, situational anxiety, recent major panic attack; some improvement in mood, but mood and anxiety remain high, paranoia improved, but continues to ruminate and panic worsened).)

In addition, one of two records cited in support of plaintiff's purported consistent report of effective control of symptoms with medications (*see* AR 25) states: "Depression – she is not doing well, she is suicidal." (AR 930.) In this July 2015 appointment, plaintiff's ADHD was controlled, but she had recently had a panic attack, and was not sleeping much, with racing thoughts. (*Id*.) On MSE, she presented as crying, talking fast and a lot, with an anxious and depressed mood and congruent affect. Giraldo assessed plaintiff as having severe depression with suicidal thoughts, and suspected she may be hypomanic, with "a week of insomnia, racing thoughts, rapid speech and talked the entire visit." (*Id*. (plaintiff disagreed and thought it was situational due to a family crisis and her depression and anxiety).) In the other record cited, dated a month earlier, plaintiff's ADHD was controlled, but her mood was depressed, anxiety was high, and she was sleeping, but waking frequently due to anxiety. (AR 927.) Again, plaintiff was crying on MSE, with an anxious and depressed mood and congruent affect.

The ALJ also cited to a portion of Dr. Petaja's report as showing plaintiff demonstrated benign presentation except for anxious and depressed mood. (AR 25.) However, Dr. Petaja's MSE results included other abnormal findings, including variable memory, with recall of only one of three objects after a delay, and limited sustained concentration and persistence, including two errors in serial sevens. (AR 703-06.)

ORDER
PAGE - 11

The Court, in sum, finds the ALJ erred in assessing the medical evidence and opinions associated with plaintiff's psychological impairments. These errors necessitate remand.

Symptom Evaluation

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[3] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ first found evidence of noncompliance with recommended treatment, which suggested the symptoms may not be as limiting as alleged. (AR 27.) Plaintiff did not continue with prescribed physical therapy appointments and did not take psychotropic medications as instructed. The ALJ next found plaintiff described daily activities not as limited as one would expect given the complaints of disabling symptoms and limitations. Finally, despite allegations of debilitating limitations, physical and mental status examinations generally indicated benign findings. (AR 27-28.) For these reasons, the ALJ found plaintiff's allegations concerning the severity of her symptoms not entirely consistent with the evidence, and any limitations imposed by her impairments accounted for sufficiently in the RFC.

As discussed above, the Court finds error in the ALJ's analysis of the medical records

---

[3] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* SSR 16-3p, case law containing that term remains relevant.

ORDER
PAGE - 12

associated with plaintiff's psychological impairments. These errors implicate the ALJ's conclusion that the evidence of generally benign MSEs justify the rejection of plaintiff's symptom testimony. The Court further finds the remaining reasons offered insufficient to support the ALJ's conclusion. In particular, the ALJ's reliance on plaintiff's fairly minimal activities of daily living does not provide persuasive justification for rejecting her testimony as to the degree of her impairment. (*See* AR 22 ("The claimant reported that in light of her mental impairment, she does not participate in past hobbies. However, she is still able to perform personal care, watch television, do light household chores, ride in a car, care for her pets, and spend time with others.")) The ALJ's assessment of plaintiff's symptom testimony lacks the support of substantial evidence.[4]

## Step Three

Plaintiff argues the evidence from Dr. Asher, Dr. Petaja, and Giraldo demonstrates she meets or equals Listings 12.04 and 12.06. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. This contention does not satisfy plaintiff's burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). To establish equivalency, there must be "medical findings equal in severity to *all* the criteria" for the listing. *Id*. at 531. Plaintiff's step three assertion of disability is no more than conclusory.

## Lay Testimony

Plaintiff's husband submitted a declaration addressing plaintiff's daily activities and functional limitations, construed by the ALJ as generally consistent with plaintiff's testimony.

---

[4] Responding to arguments raised by the Commissioner in support of the ALJ's evaluation of her symptom testimony, plaintiff, in reply, addresses evidence from other medical providers and in large part related to her physical impairments. (Dkt. 18 at 2-5.) However, plaintiff waived any arguments challenging the ALJ's consideration of this evidence by not raising the issues in her opening brief. *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009).

ORDER
PAGE - 13

(AR 26, 274-75.) The ALJ gave the lay testimony only some weight due to inconsistency with the objective medical evidence and opinions. (AR 26.) The ALJ further considered that plaintiff's husband "did not have the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms." (AR 26-27.) "More importantly," by virtue of his relationship with plaintiff, he could not be considered a disinterested third party witness "whose statements would not tend to be colored by affection for [her] and a natural tendency to agree with the symptoms and limitations [she] alleges." (AR 27.)

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject lay testimony with reasons germane to the witness. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

An ALJ may reject lay testimony upon finding it inconsistent with the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). However, in this case, the ALJ's errors in evaluating the medical evidence also call into question the rejection of the lay witness testimony.

The ALJ's other reasons for discounting the lay testimony do not suffice to support his conclusion. First, "regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." *Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017). "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Id*. Second, while evidence raising questions as to the motivation of a lay witness may be considered, *see*, *e.g.*, *Greger v.*

ORDER
PAGE - 14

*Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), the ALJ must ensure the reasoning provided is tied specifically to the witness, as opposed to a broad generalization, *see Valentine v. Comm'r SSA*, 574 F.3d 685, 693-94 (9th Cir. 2009) (ALJ erred in relying on "characteristics common to all spouses"; while testimony of a spouse who knows little about a claimant's functional capacity need not be accepted, the ALJ "must explain such ignorance in the individual case."; "Similarly, evidence that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony.") *See also Smolen*, 80 F.3d at 1288-89 (rejection of family member testimony because they were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to each individual who testified.").

## RFC and Step Five

Plaintiff argues the above-described errors call into question both the RFC assessment and the hypotheticals posed to the VE. The Court agrees.

## Remand

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). *Accord Leon v. Berryhill*, No. 15-15277, 2017 U.S. App. LEXIS 22330 at *3, 874 F.3d 1130, ___ (9th Cir. Nov. 7, 2017).

Before remanding a case for an award of benefits, three requirements must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether

ORDER
PAGE - 15

claimant testimony or medical opinion.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id*. In so doing, the Court considers the existence of outstanding issues that must be resolved before a disability determination can be made. *Id*. Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id*. (quoting *Garrison*, 759 F.3d at 1021).[5]

Finally, even with satisfaction of the three requirements, the Court retains flexibility in determining the proper remedy. *Id.* at 495. The Court may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id*. As stated by the Ninth Circuit:

> The touchstone for an award of benefits is the existence of a disability, not the agency's legal error. To condition an award of benefits only on the existence of legal error by the ALJ would in many cases make "disability benefits . . . available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."

*Id.* (quoted sources omitted). *Accord Strauss v. Comm'r of Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.") If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105.

---

[5] The SSA revised its regulations regarding the consideration of medical opinions with the intent "to make it clear that it is never appropriate under our rules to 'credit-as-true' any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 at 5858-60 (January 18, 2017) (regulation changes effective March 27, 2017). The SSA further clarified that the "credit-as-true rule" is "inconsistent with the general rule that, when a court finds an error in an administrative agency's decision, the proper course of action in all but rare instances is to remand the case to the agency for further proceedings." *Id*.

ORDER
PAGE - 16

The Court finds this matter properly remanded for further proceedings. While the ALJ erred in several respects, the record does contain evidence, including opinion evidence from both the State agency psychologists and Dr. Petaja, providing support for the RFC assessed. Further consideration of that evidence, along with a closer examination of the evidence from Dr. Asher, Giraldo, and the symptom and lay testimony, would be useful. It is further not clear, considering the record as a whole, that plaintiff is entitled to an award of benefits. On remand, the ALJ should reassess the medical record, the medical opinions addressing plaintiff's psychological impairments, and the symptom and lay testimony in reaching a determination as to plaintiff's claim for disability benefits.

## CONCLUSION

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this <u>19th</u> day of November, 2018.

Mary Alice Theiler
United States Magistrate Judge